UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

FRED WILLIAMS,

           Plaintiff,

v.   Case No.  5:06-cv-78-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social Security,

           Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. (Doc. 22.)  The Commissioner has answered (Doc. 23) and both parties have filed briefs outlining their respective positions. (Docs. 36 & 37.)  For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED.**

## I.   PROCEDURAL HISTORY

On December 3, 2002, Plaintiff filed applications for disability insurance benefits and Supplemental Security Income (SSI), claiming a disability onset date of August 1, 2002. (R. 51-53, 300-01.)[1]  Plaintiff's applications were denied initially (R. 46-47, 304-05), and upon reconsideration. (R. 43-44, 309-11)  Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 10.)  The ALJ conducted

---

[1] On March 9, 2006, Plaintiff filed subsequent claims for a period of disability, disability insurance benefits and supplemental security income benefits.  (R. 439.)  The ALJ concluded that these were duplicate claims.  (R. 349.)

Plaintiff's administrative hearing on May 16, 2005. (R. 314-44.)  The ALJ issued a decision unfavorable to Plaintiff on September 20, 2005. (R. 14-22.)  The Appeals Council denied Plaintiff's request for review. (R. 7-9.)  Plaintiff then appealed to this Court.  (Doc. 1.)  On September 19, 2006, this Court granted the Commissioner's motion for remand because the tape of the hearing contained numerous inaudible responses.  (R. 434-36.)  On October 17, 2006, the Appeals Council remanded the case to an ALJ for a *de novo* hearing. (R.  439-40.)  On April 3, 2007, ALJ Walker held a supplemental hearing. (R. 372-421.)     On September 25, 2007, the ALJ issued a decision partially favorable to Plaintiff. (R. 349-62.)  On the motion of the Commissioner, the Court reopened the case (Doc. 21) and Plaintiff filed an Amended Complaint. (Doc. 22.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[2] See 42 U.S.C. § 405(g).

[3] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which

---

[4] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] See Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

---

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See Also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff was born on December 10, 1967 and was thirty-nine (39) years old when the ALJ issued his decision following the remand. (R. 369.) Plaintiff has a high school diploma. (R. 378-79.) He has previously worked as a mechanic in a garage and tire

---

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

shop. (R. 382-83.) Plaintiff contends that he has been unable to work since October 1, 2002 because of Parkinson's symptoms, diabetes, neuropathy in his hands and feet, high blood pressure, migraines, high cholesterol, pain in his neck, shoulder and back, arthritis in his knees and legs. (R. 384-94, 481.)

During 2002 and 2003, Plaintiff was treated at the Marion County Department of Health for uncontrolled diabetes with elevated blood sugar at 350, benign hypertension, venereal warts, back pain, acid reflux, depressed mood, high cholesterol and other complaints. (119-64.) On August 22, 2002, Plaintiff reported frequent urination (R. 139); however, on September 5, 2002 Plaintiff's genitourinary exam was normal and Plaintiff denied any related issues. (R. 140.)

On May 20, 2003, Plaintiff was seen by Lawrence R. Field, D.O. for a consultative evaluation. (R. 165-67.) Plaintiff reported constant hand and feet tingling over the last eight months and intermittent neck and low back pain over the past fifteen years. Plaintiff reported that he could sit for 1 hour at a time and stand for 30 minutes at a time, that he is able to ambulate without an assistive device and that he is dyslexic. Dr. Field concluded that Plaintiff had no mental impairments, although reading would be a problem. He further concluded that sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling were unaffected.

On July 3, 2003, Plaintiff was seen by Gary Honickman, Ph.D. for a general clinical evaluation with mental status. (R. 169-70.) Dr. Honickman diagnosed Plaintiff with Major Depression without psychotic features, DSM IV 296.33.

On July 18, 2003, after reviewing the medical records, Steven L. Wise, Psy.D., completed a psychiatric review technique and mental residual functional capacity

assessment. (R. 171-84, 185-88.) Wise concluded that Plaintiff's organic mental disorders and affective disorders result in mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. He further found that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to set realistic goals or make plans independently of others.

On July 15, 2003, after reviewing the medical evidence of record, medical consultant, Faith Harvey, performed a physical residual functional capacity assessment. (R. 189-97.) Ms. Harvey concluded that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and pull without limitation; and that he was limited in his far acuity.

During 2003 and 2004, Plaintiff was seen at Express Care of Belleview by Paul Kilpatrick, PA-C for various complaints. (R. 198-226, 274-98.) A September 9, 2003 CT scan of his chest was unremarkable. (R. 212.) A September 16, 2003, MRI of his lumbar spine was normal except for a Schmorl's node at the endplate of L3, and MRIs of his thoracic spine, cervical spine and brain were unremarkable. (R. 208-11.)

7

Following abnormal liver test findings a year earlier, Plaintiff was examined by Miguel A. Ramos, M.D. (R. 260-63.) Dr. Ramos opined that the abnormal liver function tests were likely related to Plaintiff's diabetic and hypertensive medications.

On October 23, 2003, Plaintiff was seen by urologist, Edward King, M.D. (R. 273.) Plaintiff complained of a chronic dull ache in the right perineum and erectile dysfunction and specifically denied any voiding symptoms such as dysuria, frequency or urgency.

On November 4, 2003, after reviewing the medical records, Terry T. Rees, M.D. performed a Physical Residual Functional Capacity Assessment in which he found that Plaintiff could frequently lift and/or carry 10 pounds, occasionally lift and/or carry 20 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday and push and/or pull without limitation. (R. 247-54.) He further found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl, that his far acuity was limited and that he should avoid concentrated exposure to hazards.

Plaintiff was seen by neurologist, Gregory J. Howell, M.D. complaining of all over pain. (R. 264-272.) On March 25, 2004, Dr. Howell noted that September 26, 2003 MRIs of the brain, cervical, thoracic and lumbar spine were all normal. Dr. Howell diagnosed Plaintiff with polymyalgia or diabetic amyotrophy.

Beginning in 2004, Plaintiff was seen at Mercy Care, Inc. by Paul Kilpatrick, a physician's assistant for a number of complaints. (R. 514-48.) On March 10, 2004, Mr. Kilpatrick completed a "Medical Source Statement Of Ability To Do Work-Related Activities." (R. 255-59.) Mr. Kilpatrick found that Plaintiff could not lift less than 10

pounds; that he could stand and or walk less than 2 hours in an 8-hour workday and sit for less than about 6 hours in an 8-hour workday, periodically alternating sitting and standing; that he was unable to push or pull in his upper or lower extremities; that he could never climb, balance, kneel, crouch, crawl; that his manipulative functions were limited, as well as his ability to see; and that he had environmental limitations.  As for the mental component, Mr. Kilpatrick noted that Plaintiff's ability to understand, remember and carry out instructions is affected by his impairment.  Specifically, Plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual, complete a normal workday or workweek and perform at a consistent pace was poor. Mr. Kilpatrick found that Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures in a work setting was affected by his impairment.  Plaintiff's ability to travel in unfamiliar places or use public transportation and set realistic goals or make plans independently of others was poor.  Mr. Kilpatrick further noted that Plaintiff could not manage benefits in his own best interest.

In a letter dated May 11, 2005, Paul Kilpatrick wrote that he had been Plaintiff's primary care provider for the past one and one-half years.  (R. 299.)  Mr. Kilpatrick opined that Plaintiff was not capable of "maintaining any type of employment at this time or at any time in the near future." He explained that Plaintiff had diffuse muscle tenderness in the neck, shoulders, upper and lower back, arms and legs; progressive muscle weakness in the arms and legs; and unsteady gait, with frequent falls.  Mr. Kilpatrick noted that Plaintiff required a cane for assistance with ambulation and that he was issued a handicap parking permit.  He further noted that Plaintiff had demonstrated

"Parkinson-like" symptoms by gait pattern, rigidity of musculature and decreased facial muscle movement however he had not been conclusively diagnosed with Parkinson's Disease.

On October 10, 2005, Plaintiff returned to Mercy Care complaining of worsening left shoulder pain and was treated with a subacromial pain injection. (R. 524.) On October 21, 2005, Plaintiff returned with complaints of a migraine headache with photophobia and nausea. (R. 523.) On June 5, 2006, Plaintiff was seen by Mr. Kilpatrick for bilateral knee pain that was gradually worsening with swelling and stiffness. (R. 520.) The impression was non-insulin dependent diabetes mellitus, degenerative joint disease of both knees, polymyalgia, and hyperlipidemia. Mr. Kilpatrick recommended increasing Plaintiff's Percocet prescription. On August 17, 2006, Plaintiff was seen for continued bilateral knee pain. (R. 514.) Mr. Kilpatrick referred Plaintiff for x-rays and MRI's of his knees. On August 30, 2006, x-rays of both knee showed mild arthritis. (R. 509-10.) An MRI of the right knee showed small osteochondral bone defect along the upper anterior portion fo the medial tibial condyle associated with mild osteoarthritic changes and knee effusion. (R. 512.) On August 31, 2006, an MRI of the left knee showed intrasubstance grade-1 degeneration of the posterior horn of the medial miniscus associated with mild osteoarthritic changes and minimal joint effusion. (R. 507.) At some point, Mr. Kilpatrick prescribed knee braces and a cane. (R. 393-95.)

On November 20, 2006, Mr. Kilpatrick wrote another letter (almost identical to the May 11, 2005 letter) in which he opined that Plaintiff was not capable of maintaining any type of employment. (R. 548.)

At the hearing on April 3, 2007, Plaintiff testified at length about his impairments. Relevant to the instant appeal, Plaintiff testified that he has urinary problems and has to go to the restroom "about every half an hour or so." (R. 400.)   Plaintiff testified that his doctor has him on medicine for his prostrate but that he still has to go to the restroom every half-hour. Plaintiff testified that he has not worn adult diapers.  (R. 401.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had non Insulin dependent diabetes mellitus, hypertension, hyperlipidemia, mild to minimal degenerative joint disease of the knees, polymyalgias, peripheral neuropathy, tendinitis of the left shoulder, morbid exogenous obesity, a history of erectile dysfunction and epididymitis, reduced grip strength bilaterally, visual disturbances, dyslexia, inability to read very well, and major depression without psychotic features  (R. 356.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (R. 357.)

Then the ALJ found that from August 1, 2002 through October 9, 2005, Plaintiff retained the RFC to perform a significant range of light work. (R. 359-60.)   Relying on the vocational expert's testimony from the earlier hearing, the ALJ concluded that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy; and thus, concluded that Plaintiff was not disabled. However, relying on evidence showing that Plaintiff's condition had worsened, the ALJ found that Plaintiff became disabled on October 10, 2005. (R. 360-62.)

11

## IV. **DISCUSSION**

Plaintiff raises two related arguments on appeal. First, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's complaints of frequent urination. At the hearing on April 3, 2007, Plaintiff testified that he has urinary problems and has to go to the restroom "about every half an hour or so." (R. 400.) Plaintiff contends that although the ALJ acknowledged this testimony, the ALJ did not specifically reject this testimony in his decision.

As an initial matter, Plaintiff's argument is premised on the pain standard, that applies "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms."[23] However, Plaintiff's alleged problem with urinary frequency is not a subjective symptom, but rather a medical condition and, thus, the pain standard does not appear to be applicable.

Moreover, even if the pain standard was applicable, there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to produce the symptoms alleged. Here, Plaintiff's complaints of frequent urination are not supported by any record evidence.[24] Despite Plaintiff's regular visits to various medical practitioners over the course of nearly five years, only one treatment note mentions Plaintiff's frequent urination. This note on August 22, 2002, merely notes "frequent urination" without any further details. (R. 139.) A

---

[23] Lanier v. Commissioner of Social Security, 252 Fed.Appx. 311, 2007 WL 3120318 (11th Cir. 2007.)

[24] Without any discussion, Plaintiff notes two pieces of evidence – i.e., Plaintiff's testimony that his blood sugar levels were within the range of 175-300 and that record medical evidence that Plaintiff was prescribed a diuretic. (Doc. 36 at 6.) It is unclear how, if at all, this evidence supports Plaintiff's claim that he must use the restroom every 1/2 hour.

treatment note two weeks later, shows that Plaintiff's genitourinary exam was normal and Plaintiff denied having any related issues. (R. 140.) On October 23, 2003, Plaintiff was seen by Dr. King, a urologist, for complaints of perineal discomfort and specifically "denie[d] having voiding symptoms such as dysuria, frequency, or urgency." (R. 273.) Notably, no medical provider suggested that Plaintiff needed frequent restroom breaks – including Mr. Kilpatrick who treated Plaintiff for at least three years, and completed thorough evaluations of Plaintiff's functional limitations.[25]

Finally, even if the ALJ would have relied upon Plaintiff's testimony and considered the functional limitations arising from frequent urination, it would have had no impact upon whether Plaintiff was disabled during the relevant time period –i.e., from August 1, 2002 through October 9, 2005. Plaintiff did not raise urinary frequency as an issue in this case until the April 3, 2007 hearing. He did not mention urinary frequency at the first hearing on May 16, 2005 (R. 318-37), nor did he mention it in his original disability reports. (R. 65, 91, 94.)[26] Moreover, while Plaintiff testified that he currently has a problem with urinary frequency, he did not testify (or suggest) that urinary frequency had been a problem prior to October 10, 2005.

Accordingly, although the ALJ acknowledged Plaintiff's complaint of urinary frequency, there was no error by the ALJ in not including urinary frequency as a

---

[25] See e.g, Hammond v. Apfel, 5 Fed.Appx. 101, 2001 WL 87460 (4th Cir. 2001)(affirming ALJ's finding that urinary frequency was not a severe impairment where there was no objective medical evidence supporting the claimant's subjective complaints of urinary frequency.)

[26] While the transcript from the 2005 hearing had a number of inaudible responses, Defendant represents that Plaintiff did not mention urinary frequency and Plaintiff does not suggest otherwise.

functional limitation in evaluating Plaintiff's residual functional capacity for the time period from August 1, 2002 through October 9, 2005.

In his related second argument, Plaintiff contends that the ALJ's hypothetical posed to the VE was flawed because it failed to include Plaintiff's complaints of frequent urination. However, because the ALJ correctly did not include frequent urination as a limitation in Plaintiff's RFC, the ALJ was not required to include frequent urination in the hypothetical and, accordingly, the ALJ did not err in this regard.

## V. **CONCLUSION**

Based on the foregoing, the Commissioner's decision is due to be **AFFIRMED.** The Clerk shall enter judgment in favor of the Commissioner and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on December 4, 2008.

_____
GARY R. JONES
United States Magistrate Judge


Copies to:
    All Counsel